IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:21-cv-00321-MR
CRIMINAL CASE NO. 1:19-cr-00028-MR-WCM-3

| | | |
|---|---|---|
| WILLIAM LUTHER DOWNS, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. [Doc. 1].

## I.   BACKGROUND

Petitioner was charged in a 35-count Superseding Bill of Indictment along with seven co-Defendants in a drug trafficking conspiracy. Petitioner was charged in Count One with conspiracy to distribute and possess with intent to distribute a detectable amount of heroin, cocaine base, and alprazolam,[1] and 50 grams or more of methamphetamine in violation of 21 U.S.C. 846 and §§ 841 (b)(1)(B), (b)(1)(C), and (b)(2). [1:19-cr-00028-MR-

_____

[1] More commonly known as Xanax.

WCM "CR" Doc. 86]. He was also charged with: 11 counts of distribution of heroin and cocaine base in violation of 21 U.S.C. § 841(a)(1); two counts of possession with intent to distribute cocaine base and alprazolam in violation of 21 U.S.C. § 841(a)(1); one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); and one count of possession of a firearm by a felon in violation of 21 U.S.C. § 922(g)(1). [Id.].

Petitioner signed a written Plea Agreement in which he admitted his guilt of Count One in exchange for the Government's dismissal of the other 15 counts. [CR Doc. 206 at ¶ 1]. He acknowledged that: his sentencing exposure was a minimum of five years' imprisonment and a maximum of 40 years' imprisonment;[2] the sentence had not yet been determined and an advisory guideline sentence would be calculated; the sentence, up to the statutory maximum, would be determined at the Court's sole discretion; and the Petitioner would not be able to withdraw the plea as a result of the sentence imposed. [Id. at ¶¶ 1, 5, 7]. The parties agreed to jointly recommend that: the amount of drugs known to or reasonably foreseeable to Petitioner was: 218.35 grams of actual methamphetamine, 6.6 grams of a

---

[2] The Plea Agreement notes that the minimum mandatory sentence may rise to 10 years and the maximum may rise to life imprisonment if warranted by Petitioner's prior convictions. [CR Doc. 206 at ¶ 5].

mixture or substance containing a detectable amount of heroin, 4.6 grams of a mixture or substance containing a detectable amount of cocaine base, and 100 dosage units of a mixture or substance containing alprazolam [id. at ¶ 8(a)]; the base offense level would be increased by two levels because Petitioner possessed a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1) [id. at ¶ 8(b)]; the plea was timely pursuant to U.S.S.G. § 3E1.1 [id. at ¶ 8(c)]; and the career offender or armed career criminal provision could be used in determining the sentence, if applicable [id. at ¶ 8(d)]. The parties remained free to argue their respective positions regarding any other specific offense characteristics, cross-references, special instructions, reductions, enhancements, departures, and adjustments to the offense level and to seek a departure or variance from the applicable guideline range. [id. at ¶¶ 8(e)-(f)]. The Plea Agreement further set forth the rights the Petitioner was waiving by pleading guilty including the right: to be tried by a jury; to be assisted by an attorney at trial; to confront and cross-examine witnesses; and not to be compelled to incriminate himself. [Id. at ¶ 15]. Petitioner expressly agreed to waive his appellate and post-conviction rights except for claims of ineffective assistance of counsel and prosecutorial misconduct. [Id. at ¶¶ 16-17].

A Rule 11 hearing was held before the Honorable W. Carleton Metcalf, United States Magistrate Judge, on February 28, 2020. [CR Doc. 283]. Petitioner was represented by retained counsel.[3] [Id.]. Petitioner stated, under oath, that he and counsel had reviewed the Superseding Indictment and the Plea Agreement together. [Id. at 7]. Judge Metcalf read aloud Count One of the Superseding Indictment and the statute to which Petitioner was pleading guilty, explained the elements of the offense, and advised Petitioner of his sentencing exposure of a minimum of five years' imprisonment and a maximum of 40 years' imprisonment.[4] [Id. at 7-12]. Petitioner stated that he understood the charge against him, including the maximum and minimum penalties and the elements of the offense. [Id. at 13]. Petitioner agreed that counsel had discussed the sentencing guidelines with him and that he understood the Court could impose any sentence within the statutory limits and his sentence may be lower or higher than the guidelines range. [Id. at 14-15]. Petitioner stated that he understood that the plea would be binding even if the sentence was more severe than he expected. [Id. at 15]. Petitioner confirmed that by pleading guilty, he was waiving the right to plead

[3] Stephen Lacy Cash was local counsel, and Derek M. Wright was admitted *pro hac vice*. [CR Doc. 105].

[4] Judge Metcalf omitted the portions of Count One pertaining to the co-Defendants.

4

not guilty, the right to have a speedy trial before a jury with the assistance of counsel, the right to summon witnesses to testify on his behalf, the right to confront witnesses against him, and the right to receive the presumption of innocence. [Id. at 16-17]. Petitioner further stated that he was in fact guilty of Count One; that his plea was freely and voluntarily entered with a full understanding of what he was doing; that he was not promised anything other than the promises contained in the Plea Agreement; and that he was not threatened to enter the plea agreement against his wishes. [Id. at 17, 29]. Petitioner acknowledged that he knowingly and willingly accepted the Plea Agreement's limitation on the right to appeal and file post-conviction proceedings. [Id. at 33]. Petitioner confirmed that he had ample time to discuss possible defenses with counsel and was entirely satisfied with counsel's services. [Id. at 34].

In support of Petitioner's guilty plea, the parties submitted a written Factual Basis that describes 10 controlled drug buys from Petitioner, and additionally states:

> RODNEY DEJUAN ALLISON … and his co-conspirators distributed and possessed with intent to distribute a variety of controlled substances to include heroin; marijuana; cocaine base … ; powdered cocaine; methamphetamine …; Oxycodone …; and alprazolam …; in the Asheville area including in and around the Bartlett Arms Apartments ("Bartlett Arms") which is a public housing unit in Asheville. **ALLISON was assisted in his drug**

**trafficking activities by his son, WILLIAM LUTHER DOWNS, JR. … and others**….

… Investigators … seized a ledger [while executing a search of Allison's residence]. It contained references to [a co-Defendant] and DOWNS who both owed ALLISON various amounts of money….

[In connection with an October 16, 2018 methamphetamine transaction, a co-Defendant] turned the money for the 8 ounces over to DOWNS who came by to collect it for ALLISON. The drug exhibit was sent to the DEA laboratory for analysis. The laboratory confirmed the presence of methamphetamine, found that it was 98% pure, and contained 218.35 grams of "actual" meth….

**DOWNS, who went by "BiG Moneyy Guaphaa" on SnapChat, posted images and videos of himself with his Glock pistols, stacks of cash and bag of Xanax pills available for sale between January 7 and March 1, 2019. He also talked about selling drugs in his posts.** For example in one SnapChat video, DOWNS had a Glock pistol laying on his lap and then picked it up and showed that he had an extended magazine in the gun. There were also multiple SnapChat videos of DOWNS holding two different Glock pistols. Then DOWNS posted a SnapChat video of the tan Glock after he added a laser to the weapon. DOWNS posted multiple pictures on SnapChat that demonstrated that he was selling drugs and that he was selling drugs other than heroin and crack purchased by CS5 and CS7. For example, in one such post, DOWNS posted a picture with cash spread out on his lap and stated "Just came out the house and already made 1400 #Lovely Day like Everyday." In another post on January 29, 2019, DOWNS posted a picture of a clear plastic bag containing at least 100 "bars" or Xanax pills, stating "Come get them ##Bars ##Eat em up." Finally, DOWNS posted a SnapChat video on January 14, 2019 demonstrating that he was also armed while engaging in narcotics trafficking activities. More specifically, he posted a video of him driving with the statement "I keep a Glock like I was Born with it." The video then pans over to the front passenger seat where DOWNS has

thousands of dollars in drug proceeds he collected fanned out on the seat and his tan Glock pistol is laying on top of the drug proceeds.

[On March 15, 2019], [i]nvestigators stopped DOWNS … and executed the search warrant. Detective Patton recovered 2.1 grams of crack from DOWNS' person and then $13,907 in U.S. currency from the red Chevrolet Camaro….

The investigation was taken down in its entirety on April 10, 2019. When questioned by investigators, [a co-Defendant] admitted to having been a drug dealer; admitted to selling crack; admitted that he sold in the Bartlett Arms apartments; and admitted to being able to obtain heroin, meth, and Xanax from sources of supply….

DOWNS, by his plea, is held accountable for the quantity of controlled substances known to or reasonably foreseeable to him as demonstrated by various events during the course of the investigation – including the controlled buys and seizures discussed above. **The amount of heroin that was known to or reasonably foreseeable to DOWNS was 6.6 grams. The amount of cocaine base … that was known to or reasonably foreseeable to DOWNS was 4.6 grams. The amount of "actual" methamphetamine that was known to or reasonably foreseeable to DOWNS was 218.35 grams. The amount of alprazolam … that was known to or reasonably foreseeable to DOWNS was 100 dosage units.**

[CR Doc. 207: Factual Basis at 1-6] (emphasis added).

Petitioner stated at the Rule 11 hearing that he received a copy of the Factual Basis; that he read and understood it; that it was true and accurate; and that if the matter had proceeded to trial, the Government would have been able to prove each of the statements in the Factual Basis beyond a

7

reasonable doubt. [CR Doc. 283 at 27-28; see also CR Doc. 216: Certification].

The Presentence Investigation Report ("PSR") notes that the probation officer contacted defense counsel to schedule a presentence interview, but "based on the COVID-19 pandemic, in-person interviews were later suspended by the Probation Office prior to the completion of the interview." [CR Doc. 233 Part C Note; see, e.g., id. at ¶¶ 48, 92 (incorporating Petitioner's written statement accepting responsibility; incorporating Petitioner's statement addressing his personal and family data)]. The probation officer thus requested that counsel complete documentation via telephone with Petitioner and provide the documents to the Probation Office electronically, which counsel did. [Id. Part C Note]. The PSR reiterates the offense conduct from the Factual Basis, including the paragraphs cited above. [Id. at ¶¶ 22-43]. The PSR calculated the base offense level as 32 because the offense was a violation of § 846 and Petitioner was accountable for a total of 4,390.03 kilograms of converted drug weight (218.35 grams of methamphetamine actual, 6.6 grams of heroin, 4.6 grams of cocaine base, and 100 units of a Schedule IV substance) pursuant to U.S.S.G. § 2D1.1(c)(4). [Id. at ¶ 51]. Petitioner's offense level was increased by two levels for possessing a dangerous weapon pursuant to U.S.S.G. §

8

2D1.1(b)(1). [Id. at ¶ 52]. The PSR contains a three-level deduction for acceptance of responsibility based on Petitioner's written statement that "[w]hen asked [he] would pick up small amounts of money and drugs to support [his] drug habit," [Id. at ¶ 48], as well as his agreement to the Factual Basis document, and his entry of his plea. The resulting total offense level was 31. [Id. at ¶¶ 58-60]. Petitioner had four criminal history points and two more points were added because Petitioner committed the instant offense while under a criminal justice sentence (post-release supervision) pursuant to U.S.S.G. § 4A1.1(d). [Id. at ¶¶ 70-71]. This resulted in a total of six criminal history points and a criminal history category of III. [Id. at ¶ 72]. The resulting advisory guideline range was 135 to 168 months' imprisonment and at least four years of supervised release.[5] [Id. at ¶¶ 105, 108].

Defense counsel filed objections to the PSR that: the base offense level should be 26; Petitioner should receive a four-level reduction for his minimal role in the offense; the criminal history incorrectly scored two prior convictions; and the Court should sentence Petitioner below the statutory mandatory minimum sentence pursuant to 18 U.S.C. § 3553. [CR Doc. 232].

---

[5] The PSR notes that the statutory minimum term of imprisonment for this offense is five years pursuant to 21 U.S.C. §§ 846, 841(b)(1)(B). [CR Doc. 233 at ¶ 104].

The Court held a sentencing hearing on August 27, 2020. [CR Doc. 284]. Petitioner stated that he recalled the Rule 11 hearing; that he had answered the questions before Judge Metcalf truthfully; and that he would answer the questions the same if asked again. [Id. at 4-5]. Petitioner confirmed that he was pleading guilty because he is guilty, and that his plea was not the result of any threat, force, or promise other than the promises contained in the Plea Agreement. [Id. at 5-6]. Petitioner agreed that he had seen the PSR prior to sentencing and had the opportunity to review it with counsel. [Id. at 8]. Petitioner's counsel confirmed that he had an adequate opportunity to review the PSR with Petitioner. [Id.].

Defense counsel withdrew the objection to the base offense level and one of the criminal history challenges. [Id. at 9-10]. With regard to Petitioner's role in the conspiracy, counsel argued that: Petitioner had no planning or control in the conspiracy; he only engaged in small hand-to-hand transactions and picked up money for his stepfather, co-Defendant Allison; he had little interaction with any of the other co-defendants, especially Allison, who "is thought to be the head of this conspiracy;" and he was the "least culpable of all the parties in this case…." [Id. at 9-20]. The Court overruled Petitioner's role objection, noting that Petitioner "is among the [co-defendants] with the highest offense level" [id. at 19], and concluded that

Petitioner was an average participant in the conspiracy, and that his role "was not at all minimal [and] [i]n fact, it was quite substantial" [Id. at 22-23]. Counsel withdrew the remaining criminal history challenge because the reduction of the single point at issue would not change Petitioner's offense level. [Id. at 24].

Counsel conceded that the PSR correctly calculated the advisory guideline range. [Id. at 25]. Defense counsel argued for a downward variance sentence to the mandatory minimum punishment for the offense of 60 months' imprisonment due to Petitioner's relevant conduct, age, family circumstances, and the overall goals of the sentencing guidelines. [Id. at 26-36]. The Government requested a sentence within the advisory guidelines due to the facts and circumstances of this case, the seriousness of the offense, Petitioner's possession of firearms in connection with his drug trafficking activity, his criminal history, and his commission of the offense while he was on state supervision. [Id. at 40-44]. During the allocution, Petitioner apologized for his crimes and asked the Court to have mercy on him. [Id. at 44].

After considering the factors under 18 U.S.C. § 3553(a), including "unwarranted sentencing disparities" [id. at 33], the Court varied downward from the guideline range because the guideline range was "skewed

somewhat high" in relation to Petitioner's participation in the offense, and because Petitioner's stepfather pushed him back into illegal activity as soon as he was released from state prison [id. at 50]. The Court sentenced Petitioner to 108 months' imprisonment[6] to be followed by five years of supervised release. [CR Doc. 254].

Petitioner filed a *pro se* Notice of Appeal, and new counsel was appointed to represent him. [CR Docs. 256, 259]. After conferring with appellate counsel about the potential advantages and disadvantages of appealing, Petitioner chose to voluntarily dismiss his appeal. [4th Cir. Case No. 20-4472, Doc. 20]. The Fourth Circuit Court of Appeals granted the voluntary dismissal on March 4, 2021. [CR Doc. 299].

Petitioner filed the instant *pro se* Motion to Vacate pursuant to 28 U.S.C. § 2255 on October 19, 2021.[7] Petitioner raises the following claims, *verbatim*:

> GROUND ONE: Ineffective for Creating Conflict of Interest. Counsel ineffective for trying to seek sexual relationship with client's mother and abandon viable defense and violated court gag order.

---

[6] The transcript contains a typographical error, reflecting 180 rather than 108 months' imprisonment. [CR Doc. 284 at 45].

[7] See Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

12

> GROUND TWO: Counsel ineffective for failure to seek role adjustment. Counsel failed to seek a role adjustment by proving mitigating facts that could warrant a lower sentence.

[Doc. 1 at 4-5]. In an attached memorandum, Petitioner additionally argues that: counsel's conflict of interest resulted in a violation of attorney-client privilege; counsel's ineffective assistance rendered the guilty plea involuntary; counsel failed to seek a lower sentence based on disparity with Petitioner's co-Defendants, whose roles were more substantial than Petitioner's; and counsel was ineffective for failing to argue sentencing disparity on direct appeal. [Id. at 13-18: Memorandum]. As relief, Petitioner is "requesting a lower sentence."[8] [Id. at 12]. The Respondent has filed a Response arguing that the Motion to Vacate should be dismissed or denied. [Doc. 3]. Petitioner has not replied, and the time to do so has expired. [See Doc. 4].

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in

---

[8] Petitioner's Memorandum refers to exhibits to the Motion to Vacate but no exhibits have been filed. [See Doc. 1 at 16 (Memorandum stating "see exhibits"); Doc. 3 at 16 (Government's Response noting that, despite the Petitioner's reference to exhibits, the Petitioner has not included any exhibits or affidavits to support his claims)].

13

excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings …" in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION[9]

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on

---

[9] Petitioner's claims have been liberally construed, reorganized, and restated. Any argument or claim not specifically addressed in this Order has been considered and rejected.

whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 670.

### A. Involuntary Plea

Liberally construing the Motion to Vacate, Petitioner appears to argue that counsel's ineffective assistance rendered his guilty plea involuntary. Petitioner asserts that: counsel promised he would only receive a 60-month sentence; counsel attempted to obtain sexual favors from Petitioner's mother

when she became unable to pay the balance of counsel's fee; and there is "no way [that Petitioner] would have accepted a plea as written, and would have insisted on proceeding to trial" had he known about the foregoing. [Doc. 1 at 16].

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearing, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985)(quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007).

Petitioner's suggestions that ineffective assistance of counsel rendered his plea involuntary are conclusively refuted by the record. At the

Rule 11 hearing, Petitioner affirmed, under oath and in open court, that he understood the charges, his sentencing exposure, and the rights he was relinquishing by pleading guilty. [CR Doc. 283 at 7-17]. He further affirmed that his plea was freely and voluntarily entered and he specifically denied that anyone had forced or threatened him to plead guilty, or promised him anything in exchange for the plea, other than the terms of the Plea Agreement. [Id. at 17, 29]. He acknowledged that he was guilty of Count One and agreed that the Factual Basis was true and accurate and that the Government would be able to prove each of the statements in it beyond a reasonable doubt were the case to proceed to trial. [Id. at 27-28]. Petitioner further stated that he understood that the Court could impose any sentence up to the 40-year statutory maximum. [Id. at 12-13]. At the sentencing hearing, Petitioner confirmed that his answers at the Rule 11 hearing were true, that his guilty plea was freely and voluntarily entered, and that he would answer the questions the same if he were asked the same questions again. [CR Doc. 284 at 4-5].

The foregoing complies with Rule 11 and demonstrates that Petitioner's guilty plea was freely and voluntarily entered with a full understanding of its nature and consequences and that the guilty plea was supported by an independent factual basis. See Fed. R. Crim. P. 11(b)(1)-

(3); <u>United States v. DeFusco</u>, 949 F.2d 114, 116 (4th Cir. 1991). Petitioner's present self-serving and unsupported claims that counsel promised him a 60-month sentence, sought sexual favors from his mother, and disclosed confidential information to third parties, and that this rendered his guilty plea involuntary, are contradicted by his own sworn statements at the Rule 11 hearing and are rejected. <u>See</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); <u>see, e.g.</u>, <u>United States v. Lemaster</u>, 403 F.3d 216, 221-22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary).

Moreover, Petitioner has failed to demonstrate prejudice. Petitioner conclusively states that there is a reasonable probability that he would have gone to trial had counsel performed effectively. However, in this § 2255 action, he seeks only a sentence reduction; he does not seek to withdraw his guilty plea. Thus, his claim is facially deficient. Nor would it have been objectively reasonable for Petitioner to reject the plea and proceed to trial. The Plea Agreement was highly beneficial to Petitioner. In exchange for

18

Petitioner's guilty plea to Count One, the Government agreed to dismiss 15 serious charges, one of which was a § 924(c) violation that carried a mandatory consecutive five-year sentence. [See CR Doc. 233 at ¶ 106]. Further, there was strong evidence of Petitioner's guilt as set forth in the Factual Basis. [CR Doc. 207: Factual Basis at 1-6]; see United States v. Santiago, 632 F. App'x 769, 774 (4th Cir. 2015) ("when the Government's case is strong," a § 2255 petitioner "faces a nearly insurmountable obstacle to showing that it would have been rational to go to trial."); see, e.g., United States v. Fugit, 703 F.3d 248, 259 (4th Cir. 2012) (finding that the decision to go to trial would not have been objectively reasonable where the evidence of petitioner's guilt was overwhelming).

The record reveals that Petitioner's guilty plea was knowing and voluntary and that no ineffective assistance of counsel occurred. Therefore, to the extent that the Petitioner argues that ineffective assistance of counsel rendered his guilty plea involuntary, this claim is denied.

## B.    Conflict of Interest

Petitioner argues that counsel was "ineffective for creating conflict of interest" by "trying to seek sexual relationship with client's mother" after she became unable to pay counsel the entire agreed amount for Petitioner's representation. [Doc. 1 at 4, 14-15]. He argues that: counsel disclosed facts

about Petitioner's case to "associates," Petitioner's mother, and a "friend" in violation of the attorney-client privilege [id. at 13-15]; the information that counsel disclosed "caused others who would or could have aided the defense to change their mind because they feared exposure" and "may have affected the petitioner's case"[10] [id. at 13-14]; and that, after his mother rejected counsel's advances, counsel "abandon[ed] viable defense[,] … violated court gag order," and stopped trying to win Petitioner's case[11] [id. at 4, 14-16].

To establish ineffective assistance of counsel from a conflict of interest, a petitioner must show that his lawyer had an "actual conflict of interest" and that this conflict "adversely affected his lawyer's performance."  United States v. Nicholson, 475 F.3d 241, 249 (4th Cir. 2007) (quoting Cuyler v.

---

[10] Petitioner also refers to the alleged impact of counsel's actions on his stepfather's case. However, Petitioner lacks standing to assert a § 2255 claim on behalf of his stepfather. See, e.g., Bordeaux v. United States, No. 4:02-CR-00673-RMG-5, 2011 WL 13302115, at *9 (D.S.C. July 25, 2011) (petitioner did not have standing to assert claim that trial court erred by removing co-defendant's attorney); United States v. King, 36 F.Supp.2d 705, 710 n.3 (E.D. Va. 1999) (the Sixth Amendment right to the effective assistance of counsel "is a right that is personal to the defendant, and does not support a third-party standing analysis."); United States v. Concha, No. 89CR73-1, 1995 WL 257861, at *2 (N.D. Ill. May 2, 1995) ("basic rules of standing preclude Concha from asserting the claims of his co-defendants….").

[11] Any suggestion that counsel completely abandoned Petitioner, resulting in *per se* ineffective assistance of counsel pursuant to United States v. Cronic, 466 U.S. 648 (1984), is rejected.  There is no indication in the record that Petitioner was ever denied counsel at any point in the criminal proceeding or that counsel did not entirely fail to subject the prosecution's case to meaningful adversarial testing.

_Sullivan_, 446 U.S. 335, 348 (1980)). To establish an actual conflict of interest, a petitioner "must show that [his] interests diverged with respect to a material factual or legal issue or to a course of action." Id. at 249 (quoting _Gilbert v. Moore_, 134 F.3d 642, 652 (4th Cir. 1998) (_en banc_) (internal quotation marks omitted). To establish adverse effect, a petitioner must satisfy a three-part standard by a preponderance of the evidence. Id. at 251. He must: (1) identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued; (2) establish that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision; and (3) establish that defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict. Id. at 252 (quotations and citations omitted). If the petitioner can show an actual conflict that adversely affected his lawyer's performance, prejudice is presumed and there is no need to demonstrate a reasonable probability that, but for the lawyer's conflict of interest, the trial or sentencing outcome would have been different. Id. at 249 (citing _Sullivan_, 46 U.S. at 349-50).

Here, Petitioner alleges that counsel sought a sexual relationship with his mother after she was unable to pay the entire agreed fee. However, Petitioner fails to explain how this fee dispute establishes an actual conflict.

See United States v. Oliver, 406 F. App'x 808, 811 (4th Cir. 2011) ("A fee dispute does not ordinarily establish an actual conflict because courts 'presume that counsel will continue to execute [their] professional and ethical duty to zealously represent [their] client[s], notwithstanding the fee dispute.") (quoting United States v. O'Neil, 118 F.3d 65, 72 (2d Cir. 1997)). The Plaintiff's vague allusions to disclosures of information that breached the attorney-client privilege and violated an unidentified gag order, the loss of potential assistance to the defense from "others," and counsel's abandonment of the case fail to demonstrate that counsel's and Petitioner's interests diverged with respect to a material factual or legal issue. Nor has Petitioner plausibly asserted any adverse effect on counsel's performance. He has not identified any objectively reasonable strategy or tactic that counsel could have pursued, but failed to pursue because of an actual conflict.[12] Accordingly, Petitioner's claim that counsel was ineffective for creating a conflict of interest is denied.

## C. Sentencing

With regard to sentencing, Petitioner argues that counsel was ineffective for: failing to "seek a role adjustment by proving mitigating facts

---

[12] Petitioner's other claims of ineffective assistance of counsel in the Motion to Vacate fail to identify any objectively reasonable strategy or tactic that counsel could have, but failed to, pursue. These claims, therefore, are also denied.

that could warrant a lower sentence" [Doc. 1 at 5, 17]; failing to argue a sentencing disparity between Petitioner and his co-defendants who played a more significant role in the offense [id. at 17]; and failing to alert the Court that Petitioner and counsel did not "participate[] in preparing the [PSR]," which was "to the detriment of [Petitioner]" [id. at 18].

When applying the <u>Strickland</u> prejudice test in the context of sentencing, "any amount of actual jail time has Sixth Amendment significance." <u>Glover v. United States</u>, 531 U.S. 198, 203 (4th Cir. 2001).

First, Petitioner asserts that counsel should have argued that his role in the charged conspiracy was "limited to that of picking up money and this was the sol[e] interaction that petitioner played in the conduct for which he was indicted" and, although it was clear that he was selling drugs, "he was a minor participant in the case…." [Id. at 17]. He argues that, if the Court had been made aware of Petitioner's limited role in the conspiracy, it is "plausible" that he might have received a lower sentence. [Id.].

This argument is conclusively refuted by the record. Counsel filed objections to the PSR, arguing that Petitioner should receive a four-level adjustment for his role in the offense because: Petitioner was a minimal participant; Petitioner was directed to pick up or deliver relatively small amounts of money and narcotics; and Petitioner did not supervise, control,

or manage any individuals or make any decisions of substance in the conspiracy. [CR Doc. 232 at 1]. Counsel argued the role objection at length at the sentencing hearing. [CR Doc. 284 at 9-20]. The fact that the Court ultimately disagreed with counsel and overruled objection fails to demonstrate that counsel was ineffective. Petitioner has failed to identify any argument that had a reasonable probability of success that counsel failed to present in light of his admitted conduct which demonstrates that his role was not minimal. [See CR Doc. 207: Factual Basis at 1-6].

Second, Petitioner argues that counsel should have sought a lower sentence to avoid a sentencing disparity between Petitioner and co-defendants whose roles in the conspiracy were more substantial. Counsel cannot be deemed ineffective in this regard because the record reflects that: counsel presented similar arguments with regards to role; Petitioner had among the highest offense levels in the case; and the Court and concluded that Petitioner had a significant and average role in relation to his co-defendants, considered sentencing disparity when entertaining counsel's argument for a downward variance. See Cunningham v. United States, No. 1:08-cv-558, 2009 WL 1067169 (E.D. Va. April 20, 2009) ("The lack of one particular argument, especially where counsel made a different one based on the same facts, does not suffice to meet Petitioner's burden to show that

counsel's representation fell below an objective standard of reasonableness.).  Moreover, Petitioner cannot establish prejudice because the Court considered all the relevant factors including role and disparity, and varied downward because the guidelines range was "skewed somewhat high" in relation to Petitioner's participation in the offense.  [Id. at  50]. Petitioner has failed to identify any additional disparity argument that would have had a reasonable probability of resulting in an even lower sentence.

Finally, Petitioner's contention that counsel was ineffective for failing to alert the Court that Petitioner and counsel did not participate in preparing the PSR is conclusively refuted by the record.  The PSR reflects that: in-person interviews were not possible due to COVID-19; counsel completed documentation with Petitioner over the phone and submitted it electronically to the Probation Office [Doc. 233 at Part C Note]; and Petitioner's statements were incorporated into the PSR [id. at ¶¶ 48, 92].  Petitioner has failed to identify any information that counsel failed to transmit or that was omitted from the PSR.  Petitioner's present vague assertion that counsel's performance in this regard was detrimental to him fails to explain how any PSR preparation issue, or counsel's failure to raise such with the Court, affected his sentence in any way.

Petitioner has failed to demonstrate that counsel performed deficiently, or that, had counsel performed differently, there is a reasonable probability that his sentence would have been even lower than the downward variance he received. Accordingly, Petitioner's claim that counsel was ineffective with regards to sentencing is denied.

### D. Appeal

Finally, the Petitioner asserts that counsel was ineffective on direct appeal "for fail[ing] to appeal a lower sentence request based on the sentences of co-defendants more who's [sic] roles were substantial." [Doc. 1 at 14].

"A decision with respect to an appeal is entitled to the same presumption that protects sound trial strategy." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993). Additionally, the petitioner still bears the burden of showing that there is a reasonable probability that but for counsel's failure to raise an issue on appeal, the result of the proceeding would have been different, *i.e.*, that he would have prevailed on his appeal. See Smith v. Robbins, 528 U.S. 259, 285-86 (2000).

Petitioner, whose Plea Agreement contains an appellate waiver [CR Doc. 206 at ¶¶ 16-17], withdrew his direct appeal after conferring with appellate counsel regarding the potential advantages and disadvantages of

appealing. [4th Cir. Case No. 20-4472, Doc. 20]. Petitioner fails to allege that appellate counsel's advice in this regard was deficient in any way. Moreover, the sentencing claim that counsel allegedly failed to assert is meritless and had no reasonable probability of succeeding on appeal. See Section C, *supra*. Therefore, counsel's failure to raise the sentencing issue on appeal did not prejudice him. See, e.g., McCotter v. United States, No. 4:14-cv-100, 2015 WL 333010 (E.D.N.C. Jan. 26, 2015) (petitioner, who signed and had his appellate counsel file a motion to dismiss his appeal pursuant to his plea agreement, did not plausibly allege deficient performance or prejudice); Coleman v. United States, No. 3:13-cv-585, 2014 WL 1254102 (E.D. Va. March 26, 2014) (denying petitioner's claim that counsel was ineffective for convincing him to voluntarily dismiss his appeal based on an incorrect interpretation of the law because counsel's interpretation of the law was, in fact, correct, and petitioner thus was not prejudiced by voluntarily dismissing his appeal). Petitioner's claim of ineffective assistance of appellate counsel is therefore denied.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's § 2255 Motion to Vacate is denied.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

## **ORDER**

**IT IS, THEREFORE, ORDERED** that Petitioner's Motion to Vacate under 28 U.S.C. § 2255 [Doc. 1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: March 8, 2022

Martin Reidinger
Chief United States District Judge